Griselda SOTO, Individually and as Next Friend of Matthew Joel Soto, a Minor, Appellant,

v.

SEVEN SEVENTEEN HBE CORPORATION, d/b/a Adam's Mark Hotel et al., Appellee.

No. 14–98–00920–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 2000.

Richard P. Hogan, Jr., David P. Matthews, Mark T. Murray, William Louis Payne, Houston, for appellant.

James B. Lewis, Jeffrey Zane Sell, C. Timothy Reynolds, Paul E. Anderson, Jr., Houston, for appellee.

Panel consists of Justices SEARS, CANNON, and HUTSON-DUNN.[*]

## OPINION

ROSS A. SEARS, Justice (Assigned).

Appellant sued Servando Luna and his employer, appellee, for injuries to their minor child caused by the negligence of Luna. Luna went to Mexico and did not participate in the trial. The jury found Luna was negligent, but also found he was not acting within the course and scope of his employment. Thus, appellee, Seven Seventeen HBE Corporation d/b/a Adam's Mark Hotel, was not responsible for Luna's negligence. Appellant challenges this jury finding. We affirm.

### I.

Servando Luna was a housekeeper for Adam's Mark Hotel. When he arrived each day, he was given keys to enable him to check the bathrooms and open storage cabinets. At the end of his shift, he was to return the keys. On the day of the incident, Luna left work and forgot to return the keys. When he realized he had them, Luna drove his brother's truck back to the hotel and dropped off the keys. Luna had no drivers license and driving an automobile was not part of his job duties. On his return trip home from the hotel, Luna ran over and seriously injured Matthew Soto. As a result of this incident, Matthew suffered multiple fractures and a closed head injury. Matthew is permanently brain damaged and is now a special education student.

After a three day trial, a jury found that Luna's negligence proximately caused Soto's injuries, but also found that Luna was not acting in the scope of his employ-

[*] Senior Justices Ross A. Sears, Bill Cannon, and D. Camille Hutson-Dunn sitting by assignment.

ment when Soto's injuries occurred. The jury found Soto's actual damages totaled $7,700,000.00 and the trial court entered a judgment for this amount against Luna, plus pre-judgment and post-judgment interest. The trial judge also awarded a take nothing judgment in favor of Adam's Mark.

## II.

■ Soto appeals the jury's verdict and argues Luna was within the course and scope of his employment as a matter of law or, alternatively, the verdict is against the great weight and preponderance of the evidence. An appellant attacking the legal sufficiency of an adverse jury finding, on which he had the burden of proof, must overcome two hurdles. First, the record must be examined for evidence supporting the jury's finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answer, only then will we review the entire record to assess whether the contrary proposition was established as a matter of law. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex.1991); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982); *Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex.App.— Houston [14th Dist.] 1989, writ denied).

■ In reviewing a challenge that a jury finding is against the great weight and preponderance of the evidence, we consider all of the evidence in determining whether the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952). We may reverse and remand for a new trial if we conclude the jury's nonfinding is against the great weight and preponderance of the evidence. *See Cropper v. Cat-*

*erpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988).

In reviewing this issue, we note the jury, after hearing all the evidence, was not convinced by a preponderance of the evidence that Luna was acting in the scope of his employment when the accident occurred. *See C & R Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex.1966); *Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex.1986).

■ Both of these standards of review prevent the intentional or inadvertent invasion of the jury's province as the fact-finder. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (Tex.1951). The jury is the *exclusive* judge of the facts and the credibility of the witnesses. *See id.* We cannot substitute our judgment for that of the jury nor review the witnesses' credibility. *See id.; see also Jones v. Williams*, 41 Tex. 390 (1874).

## III.

■ Sufficiency of the evidence must be reviewed using the definitions and instructions contained in an unobjected-to jury charge. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964). Although the parties differ as to the status of objections filed against the charge, the scope-of-employment definitions contained in the charge were those that were requested by appellant. Thus, we will examine the evidence using Soto's definition and instructions to determine whether the evidence supports the jurys' finding that Luna was not within the scope of his employment when the incident occurred.

The scope of employment question submitted to the jury is as follows:

On the occasion in question, was Servando Luna acting in the scope of his employment?

An "employee" is acting within the scope of his employment if he is acting in the furtherance of the business of his employer.

> An "employee" is not acting within the scope of his employment if he departs from the furtherance of the employer's business for a purpose of his own not connected with his employment and has not returned to the place of departure or to a place he is required to be in the performance of his duties.
>
> However, even an employee who departs from the scope of his employment temporarily may be engaged in a special mission for the employer. A "special mission" occurs when an employee is traveling from his home or returning to it on a special errand either as part of her regular duties or at the specific order or request of his employer. When an employee has undertaken a special mission or is otherwise performing a service in furtherance of the employer's business with the express or implied approval of the employer, the employee is acting in the scope of his employment.
>
> Answer "Yes" or "No."
>
> Answer:  NO

■ Generally, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work. *See Kennedy v. American Nat'l Ins. Co.*, 130 Tex. 155, 107 S.W.2d 364 (1937); *Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex. App.—Houston [14th Dist.] 1995, no writ). This rule is based on the premise that an injury occurring while traveling to and from work is caused by risks and hazards incident to driving on public streets, which has nothing to do with the risks and hazards emanating from a person's employment. *See also Smith v. Texas Employers' Ins. Assn.*, 129 Tex. 573, 105 S.W.2d 192, 193 (1937).

It should also be noted that at oral submission, appellant waived her claim that the action was solely a "special mission." However, we will nonetheless address that issue.

■ One exception to the "to and from" rule is if an employee has undertaken a special mission at the employer's direction, or is otherwise performing a service in furtherance of the employer's business with the express or implied approval of the employer. *See Chevron, USA, Inc. v. Lee*, 847 S.W.2d 354, 355–56 (Tex.App.—El Paso 1993, no writ). Regarding an employer's implied approval, the Texas Supreme Court stated the following:

> [I]f an employee, with the knowledge and assent of the employer, repeatedly uses an automobile, not owned by the employer, in the latter's business, the employer will be held to have impliedly authorized its use and to be liable for negligence in connection therewith, *but the mere fact that an automobile was used on one occasion, unaccompanied by any evidence of other similar acts, does not justify any inference that the employee was later authorized to use the machine upon the employer's business.* The employer is not liable where the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation. He cannot be held liable under the doctrine of respondeat superior for personal injuries inflicted by an employee while engaged in unnecessarily driv-

ing his own automobile upon the master's business, without the latter's knowledge or express or implied authorization.

*Kennedy,* 130 Tex. 155, 107 S.W.2d at 366 (emphasis added).

■■■■■ "A special mission is a specific errand that an employee performs for his employer, either as part of his duties or at his employer's request." *Upton v. Gensco, Inc.,* 962 S.W.2d 620, 621–22 (Tex.App.—Fort Worth 1997, pet. denied). The special mission involves work or work-related activity apart from the employee's regular job duties. *See id.* An employee is not engaged "in furtherance of the employer's business," i.e., not engaged in a special mission, when the employer neither requires any particular means of travel nor directs the employee to take a particular route. *Upton,* 962 S.W.2d at 622; *see Brown v. American Racing Equipment, Inc.,* 933 S.W.2d 734, 736 (Tex.App.—San Antonio 1996, no writ); *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 637 (Tex.App.—San Antonio 1993, no writ); *Wilson v. H.E. Butt Grocery Co.,* 758 S.W.2d 904, 907–08 (Tex.App.—Corpus Christi 1988, no writ); *American Nat'l Ins. Co. v. O'Neal,* 107 S.W.2d 927, 927–28 (Tex.Civ.App.—San Antonio 1937, no writ).

■■■■■ Additionally, "[a]n employee must be under the control of the employer or acting in furtherance of the employer's business to be on any such 'special mission.'" *Chevron,* 847 S.W.2d at 356. "If found to be on a special mission, the employee will be considered to be in the course and scope of his employment from the time that the employee commences the special mission until its termination, absent any deviation therefrom for personal reasons." *Id.*

## IV.

■■■■■ When a jury charge commingles valid and invalid liability theories and an appellant's objection is timely and specific, any error is presumed harmful if it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 389 (Tex.2000). Additionally, "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000). Here, the jury found for appellee, and appellant requests us to review the sufficiency of the evidence in light of the jury charge as given. *See id.; Allen,* 380 S.W.2d at 609. However, an element of the scope of employment issue—that an employee is not engaged in a special mission when the employer neither requires any particular means of travel nor directs the employee to take a particular route—is not included in the instructions to the jury charge. Consequently, if the jury had found for appellant, under *Casteel,* and because appellee properly preserved error regarding the scope-of-employment issue, which does not accurately state the law regarding scope of employment, we would have to reverse and remand the case. *See Casteel,* 22 S.W.3d at 389.

Although the jury charge contained an incorrect statement of the law, it did not violate the supreme court's return to "presumed harm in the jury charge" pronouncement in *Casteel.* In *Casteel,* the appellant properly preserved the jury charge error and brought that error as a point for reversal in the court of appeals. *See* 22 S.W.3d at 387–88. Here, appellant submitted the scope-of-employment ques-

tion and has not assigned a point of error claiming that the charge was incorrect. *See, e.g., General Chemical Corp. v. De La Lastra,* 852 S.W.2d 916, 920 (Tex.1993) (Parties may not invite error by requesting an issue and subsequently objecting to its submission); *Daily v. Wheat,* 681 S.W.2d 747, 754 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e .) (same).

## V.

■■■ We now examine the evidence supporting the jury's finding that Luna was not in the scope of his employment when he injured Matthew. *See Holley,* 629 S.W.2d at 696.

On the day of the accident, Luna left the hotel early to begin his vacation. In his haste, he took the hotel keys home. Although Luna immediately drove back to the hotel to return them, it is undisputed that he did not do so at his employer's request.

Adam's Mark employees commonly forget to leave the keys with the hotel at the end of their shifts. In fact, Luna's supervisor, Rachel Vanderhorst, testified that employees took the hotel's keys home approximately fifteen times each year. She had never called any employee to request immediate return of the keys. Instead, the employee in question would return the keys the next day or at their next scheduled shift. Vanderhorst testified she would neither expect nor require an employee to come all the way back to the hotel solely to return the keys. She stated, "It is not as if … the building will shut down if the keys are not there." The keys were for storing restroom supplies. Additionally, employees knew the hotel had duplicate sets of the keys. Therefore, the hotel did not direct Luna to drive back to return the keys, had no pressing need

for him to do so, and had no knowledge of his decision to drive back to the hotel.

The hotel never told its employees they would receive an "advisory" or other adverse employment action for taking the keys home. In fact, the hotel had never disciplined any employee for taking keys home. Consistent with this inaction, the hotel did not discipline Luna in any way.

In summary, the evidence shows that the hotel had no oral or written policy requiring employees to immediately return keys taken home inadvertently. It had no practice of issuing advisories to such employees. In short, the evidence supports the jury's determination that Luna was neither acting in furtherance of Adam's Mark business nor engaged in a special mission when he returned its keys. *See Nat'l Life & Acc. Ins. Co. v. Ringo,* 137 S.W.2d 828, 831 (Tex.Civ.App.—Dallas 1940, writ ref'd) ("When the servant turns aside, for however short a time, from the prosecution of the master's work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, whether in doing so he is actuated by malice or ill will …, there is no principle which charges the master with responsibility for such action."); *Parmlee v. Texas & New Orleans R.R.,* 381 S.W.2d 90, 94 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.) ("A master is liable for acts of his servant under the doctrine of respondeat superior only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises."). The jury's negative finding for this issue is nothing more than a finding that appellant failed to carry the burden of proof on this issue. *See C & R Transport, Inc.,* 406 S.W.2d at 194; *Grenwelge,* 705 S.W.2d at 694; *see also Herbert v. Herbert,* 754

S.W.2d 141, 144 (Tex.1988) (Kilgarlin, J., plurality). Accordingly, we find there is sufficient evidence to support the jury's finding that Luna was not acting in the scope of his employment when he injured Matthew.[1]

Because there is sufficient evidence to support the jury's finding, we are not required to examine the entire record to see if the evidence establishes Luna was within the scope of his employment as a matter of law. *See Holley*, 629 S.W.2d at 696; *Campbell*, 406 S.W.2d at 194. Additionally, after reviewing the evidence in light of the entire record, we find the jury's verdict is not against the great weight and preponderance of the evidence. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d at 661.

Accordingly, we overrule Soto's first issue and affirm the trial court's judgment.[2]

---

1. This case is distinguishable from *Best Steel Bldgs., Inc. v. Hardin*, because the employee, who was found to be on a special mission, was sent from Austin to Houston for several job-related supplies and could have, except for his death, collected mileage for the trip. *See* 553 S.W.2d 122 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Additionally, the employee was directed to not use the company truck and directed to return from Austin after getting the supplies in Houston. It was on this return trip from Houston that the employee was involved in an accident. *See id.*

Our case is also not controlled by the holding in *Gebert v. Clifton*, where this Court held, in a plea of privilege case, an employee was within the course and scope of his employment when involved in an auto accident because the employee was traveling "at the direction of his employer and in the furtherance of the employer's business." 553 S.W.2d 230, 232 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dism'd). In *Gebert*, the employee was in his employer's car, was directed to travel to another one of his employer's offices, and the employee's manager testified the employee was using the car in the furtherance of the employer's business. *See id.*, at 231–32.

Also distinguishable is *Chevron, USA, Inc. v. Lee*, where Chevron was held liable for its employee's negligence resulting in an auto collision. *See* 847 S.W.2d at 355. The employee was directed by Chevron to travel sixty miles for a training seminar. He traveled to the city where the seminar was located and spent the night at his own expense. The next day, on his way to the seminar, the employee was involved in an accident. The El Paso Court of Appeals found the evidence was legally sufficient to support the jury's finding that the employee was in the course and scope of his employment at the time of the accident. The employee had been directed to attend the seminar on what would have been his day off; he was paid mileage for the trip; and the record supported the conclusion that his attendance at the mandatory seminar was for the ultimate benefit of his employer.

In each of these cases, the employee was in an accident while he was acting at the specific direction of his employer *and* the mission was in the furtherance of the employer's business. The facts of these three cases stand in direct opposition to the instant case where Luna was not acting at the direction of Adam's Mark.

2. Because we overrule his first issue, we do not need to decide Soto's second issue, which asks "[w]hether Luna's special mission, to return the keys, necessarily requires travel in both directions—delivery of the keys and a return trip home." We note "a 'special mission' exists when an employee is not simply traveling from his home to his normal place of employment, or returning from his normal place of employment for his own purpose, but is traveling from his home or returning to it on a special errand either as part of his regular duties or at the specific order or request of his employer." *Chevron*, 847 S.W.2d at 356.