TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00022-CV






Kevin Newsom, Individually and as Guardian and Next Friend of L.W.N.,

C.G.N., and C.J.N., Minors, Appellant


v.


Ballinger Independent School District, Appellee






FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT

NO. 13,810, HONORABLE BEN WOODWARD, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 In this appeal of a claim for workers' compensation death benefits arising from a fatal
automobile accident involving his spouse, Kevin Newsom, individually and on behalf of his
children, appeals the district court's summary judgment in favor of appellee Ballinger Independent
School District. For the reasons that follow, we affirm the judgment.


BACKGROUND


 In the fall of 2003, Cecyle Newsom was employed by the District as a teacher and a
junior high school girls' basketball coach. She was the head coach of the eighth grade girls'
basketball team. On Saturday, November 22, 2003, Mrs. Newsom was fatally injured in an
automobile accident as she was driving to the school complex to conduct a practice.

 Her husband, Kevin Newsom ("Newsom"), filed a claim for workers' compensation
benefits on behalf of himself and the Newsoms' three sons. The District denied the claim on the
basis that Mrs. Newsom's death did not occur in the "course and scope of her employment."

 The Texas Department of Insurance, Division of Workers' Compensation (the
"Division"), held a contested case hearing in June 2004 to determine whether Mrs. Newsom's death
resulted from a compensable injury. The hearings officer found that Mrs. Newsom was acting in the
course and scope of her employment at the time of her death and concluded that her family was
entitled to death benefits. The District appealed the hearings officer's decision to the Division's
appeals panel. The appeals panel affirmed the hearing officer's decision.

 In September 2004, the District sought judicial review in district court. In its original
petition, the District maintained that Mrs. Newsom was driving to work when the accident took
place. The District moved for summary judgment on the ground that labor code section
401.011(12)(A) defined the phrase "course and scope of employment" to exclude travel to and from
a person's place of employment. Accordingly, the District argued that Mrs. Newsom's death was
noncompensable and the Division's award of death benefits should be reversed.

 The district court granted the District's motion and rendered summary judgment
reversing the Division's benefits award. On Newsom's appeal, the judgment was set aside as void,
the appeal was dismissed, and the case remanded to the district court. (1) The parties again filed cross-
motions for summary judgment on the issue of whether Mrs. Newsom was in the course and scope
of her employment at the time the accident occurred. The district court again granted summary
judgment in favor of the District, and this appeal followed.


DISCUSSION


 The only issue on appeal is whether the District established as a matter of law that
Mrs. Newsom's death did not occur in the "course and scope of her employment" because she
was merely traveling to her place of employment, and therefore, the injury was noncompensable. 
Because Mrs. Newsom was driving to a Saturday practice and such practices are encouraged by her
employer, Newsom contends that she was acting on a "special mission" for her employer, that she
was therefore acting in the course and scope of her employment, and the injury was therefore
compensable.

 The parties do not dispute that an injury is compensable if it occurs in the "course and
scope of employment." Section 401.011(12) of the Texas Labor Code defines that term:


 (12) "Course and scope of employment" means an activity of any kind or character
that has to do with and originates in the work, business, trade, or profession
of the employer and that is performed by an employee while engaged in or
about the furtherance of the affairs or business of the employer. The term
includes an activity conducted on the premises of the employer or at other
locations. The term does not include:


 (A) transportation to and from the place of employment unless:


 (i) the transportation is furnished as a part of the contract of
employment or is paid for by the employer;


 (ii) the means of the transportation are under the control of the
employer; or


 (iii) the employee is directed in the employee's employment to
proceed from one place to another place.



Tex. Labor Code Ann. § 401.011(12) (West 2006) (emphasis added).

 Generally, an employee is not acting in the course and scope of employment while
traveling to and from work. See, e.g., Texas Gen. Indem. Co. v. Bottom, 365 S.W.2d 350, 353
(Tex. 1963); Longoria v. Texaco, Inc., 649 S.W.332, 335 (Tex. App.--Corpus Christi 1983,
no writ); London v. Texas Power & Light Co., 620 S.W.2d 718, 719-20 (Tex. Civ. App.--Dallas
1981, no writ); American Nat'l Ins. Co. v. O'Neal, 107 S.W.2d 927, 928 (Tex. Civ.
App.--San Antonio 1937, no writ). This rule is based on the premise that an injury occurring while
traveling to and from work is caused by risks and hazards incident to driving on public streets, which
has nothing to do with the risks and hazards emanating from a person's employment, Smith v. Texas
Employers' Ins. Assoc., 105 S.W.2d 192, 193 (Tex. 1937), and the employer has not increased the
employee's risk beyond the risk to the general public.

 An exception to the general rule exists where an employee has undertaken a "special
mission" at the employer's direction or is otherwise performing a service in furtherance of the
employer's business with the express or implied approval of the employer so that "the employee is
directed in the employee's employment." Tex. Labor Code Ann. § 401.011(12)(A)(iii); see also 
Chevron, U.S.A., Inc. v. Lee, 847 S.W.2d 354, 356 (Tex. App.--El Paso 1993, no writ); Gebert
v. Clifton, 553 S.W.2d 230, 231-32 (Tex. Civ. App.--Houston [14th Dist.] 1977, writ dism'd w.o.j.). 
Injuries that occur while driving between job sites are covered based on a direction by the employer
to proceed from one place to another. To be on a special mission, an employee must be acting under
the control or in furtherance of the employer. Chevron, U.S.A., Inc., 847 S.W.2d at 356. An
employee is not engaged in a special mission when the employer neither requires a particular means
of travel, nor directs the employee to take a particular route.

 A special mission is a specific errand that an employee performs for his employer,
either as part of his duties or at his employer's request. It involves work or a work-related activity
apart from the employee's regular job duties. See Chevron, U.S.A., Inc., 847 S.W.2d at 356
(employee traveling at direction of employer en route to mandatory seminar was on a special
mission); Best Steel Bldgs., Inc. v. Hardin, 553 S.W.2d 122, 129 (Tex. Civ. App.--Tyler 1977,
writ ref'd n.r.e.) (employee instructed to travel from job site to pick up supplies was on a special
mission); see also Direkly v. ARA Devcon, Inc., 866 S.W.2d 652, 654 (Tex. App.--Houston
[1st Dist.] 1993, writ dism'd w.o.j.) (employee who stopped at friend's house to retrieve briefcase
so she could work at home was not on a special mission).

 The undisputed summary-judgment proof shows that Mrs. Newsom was killed in a
single-vehicle automobile accident on her way to a practice of her girls' basketball team on a
Saturday. She had departed her residence and was on her way to the District's facilities where both
junior high and high school classes were conducted. The facility is a single complex utilized jointly
by the junior high and high school. It was also undisputed that her purpose in going to the District's
facility that day was to conduct basketball practice with her eighth grade girls' basketball team.

 The District contends that Mrs. Newsom was traveling to her regular place of
employment and was therefore outside of the definition of the term "course and scope of
employment." See Tex. Labor Code Ann. § 401.011(12). Because transportation to and from a place
of employment is not included within the definition of "course and scope of employment," an injury
is not compensable unless it falls within one of the three exceptions to noncompensability. The
parties dispute only whether Mrs. Newsom was on a "special mission" as to fall within the third
exception to the noncompensability provision, i.e., that she was directed by her employer. Newsom
urges and averred in his affidavit that the Saturday practice was "a special practice, in furtherance
of her duties as the coach" and that "she was encouraged to have such special practices by
the school."

 In support of its motion for summary judgment, the District produced the affidavits
of Mickey Owens, the director of athletics for the District; Tri Danley, the high school varsity girls'
basketball coach; Freda Perez, the coach of the high school girls' junior varsity basketball team; and
Nancy Minzenmayer, the seventh grade girls' basketball coach. The District's summary judgment
evidence showed that the eighth grade girls' team generally practiced from 3:00 to 3:45 p.m. on
school days. Owens averred that University Interscholastic League ("UIL") rules would not allow
teams to practice after school and on Saturdays except during specific times of the year. When UIL
rules did allow additional practice after school and on Saturdays, the District allowed the coach to
conduct those practices, as long as the practices were in compliance with UIL regulations and did
not exceed limitations concerning the amount of time that could be spent in practice. Owens also
averred that extra practice time was allowed and encouraged, and that it was not unusual for the
girls' basketball teams to practice after school or on Saturdays: "Although Saturday was not a
regular practice day, Saturday practice was not an unusual occurrence."

 The proof also showed that Mrs. Newsom had total control over the scheduling of
practices for her team. Neither Owens nor Tri Danley, the high school girls' basketball coach and
Mrs. Newsom's immediate supervisor, set the schedule for the teams to practice. Danley averred
that Saturday practices were not allowed by the UIL until after the last Monday in October. In her
affidavit, she stated:


 Cecyle Newsom and Nancy Minzenmayer set their own schedules for their teams to
practice. Saturday practices for the girls' basketball teams were not required by me
or the athletic department, but they were allowed. The only limitation or restriction
was that the coach comply with the UIL rules on the amount of time that could be
spent in practice, especially limitations concerning practice after school and practices
on Saturday. The only other limitation was having available gym space.


Danley averred that on November 22 she was deer hunting and had not scheduled or contemplated
practices by any of the teams or a scrimmage between any of the teams: "[T]here was no planned
scrimmage between the high school girls' varsity teams and the 8th grade girls' 'A' team on
Saturday, November 22, 2003." Nor did she instruct Mrs. Newsom to conduct a practice on that
date. She left the practice schedule to Mrs. Newsom's discretion. She averred:


 Basketball practice at that time of year on Saturday was not unusual. This was a
routine practice, and it was a normal or routine part of Cecyle Newsom's job as head
coach of the 8th grade girls' basketball team.


There is no testimony that anyone in the District directed Mrs. Newsom to conduct a practice on that
day. The decision as to the scheduling of practices was left to her discretion and, on that day, it is
uncontroverted that Mrs. Newsom alone decided that she would schedule a practice.

 In response to the District's motion and in support of his own motion for summary
judgment, Newsom averred that the practice was not a "regularly scheduled practice," but was
instead a "special practice." But he does not dispute that practices were conducted regularly after
school and on Saturdays. Nor does he dispute that Mrs. Newsom scheduled her practices.

 Relying on Evans v. Illinois Employers Ins., 790 S.W.2d 302 (Tex. 1990), Newsom
urges that because the practice was not a regularly scheduled practice, it was transformed into a
"special mission." In Evans, two employees working on their company's contract with the Army
Corps of Engineers to relocate a county road and railroad tracks had been instructed by their
supervisor on the Friday before the accident to attend a safety meeting at 7:30 a.m. on the following
Monday morning, at which time their pay began. As the two men were driving directly to the
meeting on Monday morning, they collided with a train. Because all employees were required to
attend the regularly scheduled safety meetings as a part of their employment, attendance was "an
integral part of the job, and not a special mission, travel to the safety meeting was simply travel to
work." Id. at 304. The employees asserted that because the meeting started at an earlier time than
their usual work began and was at a different location than their work that they were on a special
mission. The court rejected this argument:


 Had [the employees] been injured while en route from the safety meeting to the
primary work site[], these injuries would have been covered by the Act. However,
since neither of them had begun work, their injuries fall squarely within the 'coming
and going' rule and they are thereby precluded from recovering workers'
compensation benefits. If other factors are not found to be special, then the employee
must have been actually working as he traveled down the road in order for an injury
to be compensable.


Id. at 305. Because the employer neither supplied the transportation, compensated the employees
for transportation time to the safety meetings, specified the route to be taken, nor was aware of the
route normally taken, there was nothing that would bring the employees within the coverage of the
Act. By merely being on their way to work at the time of the accident, the court concluded that the
employees were outside the scope of employment. Id.

 In this case, Mrs. Newsom was driving to the school complex for practice; she was
not traveling on a "special mission" for the school district, nor was she traveling at anyone's
direction or control. We conclude that the accident occurred while Mrs. Newsom was en route to
work and that the accident did not occur in the course and scope of her employment.


CONCLUSION


 We affirm the judgment of the district court granting summary judgment in favor of
the District.



 

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 17, 2007
1. See Newsom v. Ballinger Indep. Sch. Dist., 213 S.W.3d 375 (Tex. App.--Austin 2006,
no pet.).